IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| INCENTIVE LOGIC, INC., a Delaware corporation,<br><br>Plaintiff,<br><br>v.<br><br>FLAIR COMMUNICATIONS AGENCY, INC., an Illinois corporation,<br><br>Defendant. | No. 07 C 6762<br><br>Judge Wayne R. Andersen |

## FLAIR COMMUNICATIONS AGENCY, INC.'S ANSWER TO COMPLAINT

Flair Communications Agency, Inc. ("Flair"), by its undersigned attorney, and for its Answer to the Complaint filed by Incentive Logic, Inc. ("Incentive"), states:

### PARTIES

1. Plaintiff Incentive Logic, Inc. ("Incentive") is a Delaware corporation having its principal place of business in Scottsdale, Arizona.

**ANSWER:** Flair lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of paragraph 1.

2. Defendant Flair Communications Agency, Inc. ("Flair") is an Illinois corporation having its principal place of business in Chicago, Illinois.

**ANSWER:** Flair admits the allegations of paragraph 2.

### JURISDICTION AND VENUE

3. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1) (diversity) since the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs, and the case is between citizens of different states.

**ANSWER:** Flair admits the allegations of paragraph 3.

4. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a) because (a) defendant resides in this district, and (b) a substantial part of the events or omissions giving rise to the claim occurred in this district.

**ANSWER:** Flair admits the allegations of paragraph 4.

## FACTUAL ALLEGATIONS

5. Incentive is in the business of developing and administering performance-based rewards programs.

**ANSWER:** On information and belief, Flair admits the allegations of paragraph 5.

6. Flair is an advertising and public relations agency.

**ANSWER:** Flair admits the allegations of paragraph 6.

7. In 2006, Flair desired to engage Incentive to provide a loyalty and rewards program encompassing Incentive's web-enabled points application program account servicing, Folio™ reward catalog technology and reward fulfillment service for participants.

**ANSWER:** Flair admits that through its former employee Peter Bray, Flair discussed with Incentive the possibility of engaging Incentive to develop a rewards program that would involve one or more of Flair's clients. Except as admitted, Flair denies the allegations of paragraph 7.

8. Incentive and Flair entered into a Master Agreement, effective August 25, 2006 (the "Agreement"), a copy of which is attached hereto as Exhibit A.

**ANSWER:** Flair admits the allegations of paragraph 8.

9.      Under the Agreement, Incentive agreed to design, set-up and launch, and provide program administrative support for an incentive reward points program for the benefit of Flair's customer Research In Motion, Ltd. ("RIM"), as described in detail in Section I of Addendum A to the Agreement (Thereinafter referred to as the "Addendum").

**ANSWER:**   Flair admits the allegations of paragraph 9 to the extent they are consistent with the actual language of the Master Agreement and Addendum A, when read as a whole and properly interpreted. Except as admitted, Flair denies the allegations of paragraph 9.

10.     Under Section D of the Agreement and Section II of the Addendum, Flair agreed to make certain payments to Incentive for these services.

**ANSWER:**   Flair admits the allegations of paragraph 10 to the extent they are consistent with the actual language of the Master Agreement and Addendum A, when read as a whole and properly interpreted. Except as admitted, Flair denies the allegations of paragraph 10.

11.     Pursuant to Section II(2) of the Addendum, entitled Payment for Points, Flair agreed to pay Incentive for points as they were redeemed by participants as follows: On a monthly basis, Flair agreed to pay Incentive $1.00 for every 100 points redeemed by participants, however, this payment was subject to a reduction of 10% for redemption of points, and therefore the amount required to be paid monthly was $0.90 for every 100 points redeemed (after the adjustment to reflect the 10% redemption amount).

**ANSWER:**   Flair admits the allegations of paragraph 11 to the extent they are consistent with the actual language of the Master Agreement and Addendum A, when read as a whole and properly interpreted. Except as admitted, Flair denies the allegations of paragraph 11.

12.     Section II(2) of the Addendum further provides for a "Minimum Contract Amount" of $500,000 payable to Incentive for points redeemed during the initial one-year term of the Agreement Said provision states in its entirety:

> [Flair] agrees that the minimum amount payable to Incentive for points redeemed by Products from the Supplier Network during the initial one year term of this Agreement shall be Five Hundred Thousand ($500,000) ("Minimum Contract Amount); provided that there will be

3

no minimum requirement if this Agreement is terminated prior to the expiration of the one (1) year term due to a termination of the RIM Contract or default by Incentive. Incentive acknowledges and agrees that the gross invoice amount of points redeemed (prior to the 10% redemption) shall be the amount used for purposes of calculating the Minimum Contract Amount.

**ANSWER:** Flair admits the allegations of paragraph 12 to the extent they are consistent with the actual language of the Master Agreement and Addendum A, when read as a whole and properly interpreted. Except as admitted, Flair denies the allegations of paragraph 12.

13. The Agreement became effective August 25, 2006 and remained in effect for a period of one year thereafter, through and including August 24, 2007. (See Exhibit A hereto, Agreement, Section E, paragraph 1; Addendum A, first sentence.)

**ANSWER:** Flair denies the allegations of paragraph 13, as no RIM Contract as that term is defined in the Master Agreement ever became effective.

14. The Agreement was not terminated prior to the expiration of the one-year term.

**ANSWER:** Flair denies the allegations of paragraph 14.

15. Incentive designed, set-up and launched, and administered the RIM Incentive Reward Points Program, and otherwise has fully performed all of its obligations under the Agreement.

**ANSWER:** Flair denies the allegations of paragraph 15. Answering further, in at least two cases, Flair clients attempted to redeem points that Incentive failed to fulfill, for which Flair had paid Incentive. As a result, Flair lost time and money in fulfilling Incentive's obligations.

16. In exchange for its services provided during the one-year term of the Agreement, Incentive received only $383,956.45 for points redeemed by participants, and therefore it was entitled to the Minimum Contract Amount determined under Section 11(2) of the Addendum.

**ANSWER:**   Flair denies the allegations of paragraph 16.

17.   The Minimum Contract Amount owed to Incentive under the Agreement is $82,107.30 calculated as follows: $500,000 minus $417,892.70, which is the gross invoice amount for points redeemed (prior to the 10% redemption).

**ANSWER:**   Flair denies the allegations of paragraph 17.

18.   Incentive has made demands upon Flair for payment of the amount owed under the Agreement as set form herein. Flair has failed and refused to pay the amount owed.

**ANSWER:**   Flair admits that Incentive has made demands for payment upon Flair and that Flair has declined to pay Incentive any amounts in addition to the $417,892.70 it previously paid Incentive, but denies that any further amounts are due to Incentive.  Except as admitted, Flair denies the allegations of paragraph 18.

19.   Flair thus has breached its obligation under the Agreement to pay Incentive the amount due under the Minimum Contract Amount provision of the Agreement despite Incentive's demands.

**ANSWER:**   Flair denies the allegations of paragraph 19.

20.   Pursuant to the Illinois Interest Act, 815 ILCS 205/2, Incentive is entitled to pre-judgment interest at the rate of 5% per annum on the amount due.

**ANSWER:**   Flair denies the allegations of paragraph 20.

21.   Pursuant to Section L of the Agreement: "In the event of any legal action, including arbitration, arising out of or in connection with this Agreement, the prevailing party shall be entitled to recover its reasonable attorney's fees, costs and expenses incurred in such action."

**ANSWER:** Flair admits the allegations of paragraph 21 to the extent they are consistent with the actual language of the Master Agreement and Addendum A, when read as a whole and properly interpreted. Except as admitted, Flair denies the allegations of paragraph 21.

22. As the proximate result of Flair's breach of its obligations under the Agreement, Incentive has suffered monetary damages in the amount of $82,107.30, plus interest, attorney's fees, costs and expenses.

**ANSWER:** Flair denies the allegations of paragraph 22.

WHEREFORE, Defendant Flair Communications Agency, Inc. prays that this Court enter judgment in its favor and against the Defendant Incentive Logic, Inc., dismissing the Complaint with prejudice, awarding Flair its reasonable attorneys' fees, costs and expenses pursuant to the Section L of the Master Agreement and grant Flair such other and further relief as this Court deems just and proper.

Dated: January 23, 2008

Respectfully submitted,

FLAIR COMMUNICATIONS AGENCY, INC.

By: /s/ Cary E. Donham
One of its Attorneys

Cary E. Donham, A.R.D.C. #6199385
SHEFSKY & FROELICH LTD.
111 E. Wacker Dr., Suite 2800
Chicago, Illinois 60601
Attorney ID No. 29143
Tel: (312) 527-4000
Fax: (312) 527-4011

Counsel for Defendant
1072704_1