**07 C 6762**

JUDGE ANDERSEN
MAGISTRATE JUDGE KEYS

# EXHIBIT A

09/24/2006  17:38  4807760899                    ILI                                  PAGE  01


INCENTIVELOGIC
7835 East McClain Drive • Scottsdale, AZ 85260

## MASTER AGREEMENT
### Incentive Reward Points Program

This Master Agreement (the "Agreement") is made effective as of the Effective Date by and between INCENTIVE LOGIC, INC., a Delaware corporation (hereinafter referred to as "INCENTIVE LOGIC"), having its principal office at 7835 E. McClain Drive, Scottsdale, AZ 85260, and FLAIR COMMUNICATIONS AGENCY, INC., an Illinois corporation (hereinafter referred to as "Partner"), having its principal office at 214 West Erie Street, Chicago, Illinois 60610.

Partner desires to engage INCENTIVE LOGIC to provide a Loyalty and Rewards Program encompassing INCENTIVE LOGIC's web-enabled points Application (Loyalty Studio) program account servicing, Folio™ reward catalog technology and reward fulfillment service for Participants.

The parties hereby agree as follows:

A. CERTAIN DEFINITIONS. As used herein, the following terms shall have the meaning herein ascribed:

1. "Folio" is a Product redemption category which requires a certain predetermined number of points to redeem Products in such category.
2. "Folio™ reward catalog" is a customized, online catalog with targeted rewards based on the demographics of Participant.
3. "Products" are items that INCENTIVE LOGIC develops, manufactures, licenses, or purchases for resale and/or services that INCENTIVE LOGIC sells or fulfills through its web site(s). Products may include items licensed or purchased for resale from Partner. Charitable donations are deemed as products; but are subject to service charges added to the face value to cover processing.
4. "Application" is any software, hardware, website, images/artwork or combination thereof, developed, manufactured, packaged, or licensed by or to INCENTIVE LOGIC. This term is primarily used to refer to the Loyalty Reward Platform as provided to our Partner.
5. "Program" encompasses the entire INCENTIVE LOGIC Solution designed for RIM/T-Mobile consisting of some or all of the following: Application, Program design, Program theme, marketing materials, collateral, images/artwork data, metrics, or other intellectual property belonging to INCENTIVE LOGIC packaged as a solution for our Partner.
6. "Participant" is the individual customer, panelist, employee, or other member of the target audience of RIM that has been deemed by our Partner or RIM to be an eligible participant in the Program.
7. "Reward Site" is the website in which Participants of the Program can view and redeem their reward points.
8. "RIM" is Research in Motion Limited.
9. "Studio Director" is the web-based administrative tool by which Partner can gain real-time access to user data and reporting.
10. "Supplier Network" is the network of vendors from which INCENTIVE LOGIC purchases Products on a regular basis.

B. GRANT OF LICENSE. Subject to the terms and conditions of this Agreement, INCENTIVE LOGIC and Partner hereby respectively grant to the other the nonexclusive, non-transferable right to reproduce and display certain specified logos, trademarks, trade names and similar identifying material relating to each party's business and web site(s) (the "Marks"), for use solely in connection with the purposes contemplated by this Agreement. The parties acknowledge and agree that use of the Marks by either party under this Agreement shall, in all cases, be expressly subject to the prior approval, use guidelines, specifications and periodic inspection of the other party. Except for the limited license rights granted herein, neither party shall acquire any other proprietary rights in the other party's Marks.

C. OBLIGATIONS OF INCENTIVE LOGIC.
1. Obligations of Incentive Logic detailed in Addendum A- Statement of Work (Section I)
2. Service Level Agreement detailed in Exhibit A.

chgo1\30819519.61

www.incentivelogic.com  Ignite Performance™


**INCENTIVELOGIC**
7835 East McClain Drive • Scottsdale, AZ 85260

3. INCENTIVE LOGIC agrees that all correspondence regarding the subject matter of this Agreement shall be directed to Partner, and not to RIM, unless Partner specifically requests that INCENTIVE LOGIC contact RIM regarding a certain matter. If INCENTIVE LOGIC does correspond with RIM directly on any matter, INCENTIVE LOGIC agrees to inform Partner in writing of any developments or updates resulting from such correspondence.

### D. OBLIGATIONS OF PARTNER.
1. Obligations of Partner detailed in Addendum A- Statement of Work (Section II).

### E. TERM AND TERMINATION.
1. Term. This Agreement shall become effective upon execution hereof ("Effective Date") and will remain in effect for a period of one (1) year thereafter, provided, however, this Agreement shall automatically terminate on September 30, 2006 in the event Partner has not enter into a binding agreement with RIM relating to the incentive awards program to be developed by INCENTIVE LOGIC hereunder (the "RIM Contract"). Notwithstanding the foregoing, Partner may at any time during the initial term or at any time thereafter terminate this Agreement without cause upon ninety (90) days prior written notice.

2. Termination for Default. If either party defaults in any of its material obligations under this Agreement, the non-defaulting party, at its option shall have the right to terminate this Agreement by written notice unless, within fifteen (15) calendar days after written notice of such default, the defaulting party remedies the default, or, in the case of a default which cannot with due diligence be cured within a period of fifteen (15) calendar days, the defaulting party institutes within the fifteen (15) calendar days steps necessary to remedy the default and thereafter diligently pursues the same to completion within thirty (30) days after written notice of such default.

3. Effect of Termination. Upon the termination of this Agreement, the licenses granted pursuant to Section B herein shall immediately terminate. Further, INCENTIVE LOGIC shall return all marketing materials and all other property provided by Partner pursuant to this Agreement that INCENTIVE LOGIC has in its possession. Partner shall pay INCENTIVE LOGIC as set forth in this Agreement through the date of termination. Unless otherwise agreed by the parties, upon expiration of this Agreement, there shall be a thirty (30) day grace period allowing Participants to redeem points if they so choose. If Partner terminates by providing ninety (90) days prior notice, Participants may redeem points prior to termination but there shall be no grace period after the date of termination. INCENTIVE LOGIC will send reminders to Participants of the expiration date for points earned. Regardless of the reason for termination, INCENTIVE LOGIC will reasonably cooperate with Partner to assist in the smooth transition of the Program in the event that Partner identifies a new vendor to operate an incentives program for panel members. Sections D E, F, G, H, I, K and L of this Agreement will survive termination of this Agreement. Partner shall also be entitled to receive all records detailing all program activity, including points earned, points redeemed, and redemptions made by Partner's INCENTIVE LOGIC registrants upon termination of this Agreement, provided that Partner has paid INCENTIVE LOGIC all fees due under this Agreement.

### F. REPRESENTATIONS AND WARRANTIES.

Partner and INCENTIVE LOGIC each represent, warrant and covenant that (i) they have the full power and authority to enter into this Agreement and to perform their respective obligations hereunder; (ii) they have the right to grant the rights and licenses contemplated by this Agreement; and (iii) any content provided by either party, including without limitation all trademarks, trade names and service marks, and the reproduction, distribution and use thereof as contemplated by this Agreement will not infringe or misappropriate any patent, copyright, trademark, trade secret, publicity, privacy or other rights of any third person, and are not and will not be defamatory or obscene.

INCENTIVE LOGIC further warrants that (i) it will provide the services hereunder using professional care and skill; and (ii) that it will coordinate and comply with all international, national, state, local or other legal requirements required to establish and administer the domestic or international incentive program set forth hereunder.


**INCENTIVELOGIC**
7835 East McClain Drive • Scottsdale, AZ 85260

### G. LICENSE GRANT.

Subject to the payment of the applicable fees, and subject to the terms and conditions of this Agreement, INCENTIVE LOGIC hereby grants Partner a limited, non-exclusive, non-transferable, non-sublicensable, revocable license to use the Program to the extent described in this Agreement in accordance with the instructions, and in connection the application services, provided to Partner by INCENTIVE LOGIC, solely for its internal use.

The following additional terms apply for Partner's Participants use of, or access to, the Program: (a) each Participant may access the RewardSite only using his or her issued User ID and password; (b) the licenses granted herein are personal and specific to Named Participants, and no person or entity other than Named Participant will access or use the RewardSite without the prior written consent of INCENTIVE LOGIC.

### H. INDEMNIFICATION.

1. Indemnification. Each party agrees to defend, indemnify and hold harmless the other party and their affiliates, and their respective officers, directors, employees for any and all loss, cost, liability or expense (including reasonable attorneys' fees) arising from (i) any third party claim of copyright and/or trademark infringement arising from the other party's exercise of the licenses granted by the parties in Section B of this Agreement; (ii) any third party claim that any content provided by or for the other party in conjunction with this Agreement (including without limitation logos, domain name and/or trademark) infringes any third party proprietary rights; (iii) any third party claim arising from a breach of the representations and warranties set forth in Section F above by the other party; (iv) any third party claim arising out of, or related to the services provided by the other party in connection with the operation of their respective web sites; and (v) any third party claim arising out of a privacy violation by the other party.

2. Where one party is required to indemnify the other as stated in this Section, the party seeking indemnification shall (i) notify the other party within twenty (20) calendar days of any suit or written claim against such party, and (ii) permit the indemnifying party to defend, compromise or settle the claim and give the indemnifying party all reasonable information, assistance and authority to enable such indemnifying party to do so. In no event shall indemnifying party settle any such claim, lawsuit, or proceeding without the other's prior written consent, which shall not be unreasonably withheld. In all events, the party being indemnified may participate in any action with counsel of its own choosing at its expense.

3. Infringement. Where a claim is made that material provided by either party infringes a U.S. patent, U.S. trademark or copyright or other proprietary right of a third party enforceable in the U.S. or where one is reasonably likely in the providing party's opinion, the providing party may (i) replace some portion of the offending property with non-infringing and reasonably comparable property, (ii) obtain a license to use any infringing property, or (iii) if the foregoing options are not reasonably available in the providing party's opinion, terminate this Agreement upon notice to the other party.

### I. LIMITATION OF LIABILITY.

1. EXCEPT AS SET FORTH IN SECTION H ABOVE, UNDER NO CIRCUMSTANCES WILL EITHER PARTY BE LIABLE TO THE OTHER IN CONNECTION WITH THE SUBJECT MATTER OF THIS AGREEMENT UNDER ANY CONTRACT, STRICT LIABILITY, NEGLIGENCE OR OTHER LEGAL OR EQUITABLE THEORY FOR: (i) ANY INDIRECT, SPECIAL, INCIDENTAL OR CONSEQUENTIAL DAMAGES; (ii) LOST PROFITS, LOST REVENUE OR DATA OR; (iii) COST OF PROCUREMENT OF SUBSTITUTE GOODS OR SERVICES. UNDER NO CIRCUMSTANCES, EXCEPT FOR LIABILITIES UNDER SECTION H AND LIABILITIES FOR ANY BREACH OF THE CONFIDENTIALITY PROVISIONS OF SECTION J, IS EITHER PARTY LIABLE TO THE OTHER FOR DAMAGES, STRICT LIABILITY, TORT OR OTHER LEGAL OR EQUITABLE THEORY, IN EXCESS OF THE HIGHEST TOTAL CUMULATIVE AMOUNT PAID BY ONE PARTY TO THE OTHER UNDER THIS AGREEMENT.


7835 East McClain Drive · Scottsdale, AZ 85260

2. Partner or its designee shall determine which members of their audience are eligible to become Participants and gain access to the Program and Partner Folios. RJM shall be fully responsible for the accounting treatment of accrued points. In the event Incentive Logic allows a member who is not eligible to become a Participant to participate in the rewards program and such participant redeems points, Incentive Logic acknowledges and agrees that Partner shall not have to pay Incentive Logic for points redeemed by such member, nor shall INCENTIVE LOGIC have to honor the redemption of points by such member.

J. **CONFIDENTIALITY AND PROPRIETARY RIGHTS.**

1. Confidentiality. The parties agree and acknowledge that, as a result of negotiating, entering into and performing this Agreement, each party has and will have access to certain of the other party's Confidential Information (as defined below). Each party also understands and agrees that misuse and/or disclosure of that information could adversely affect the other party's business. Accordingly, the parties agree that, during the term of this Agreement and thereafter, each party shall use and reproduce the other party's Confidential Information only for purposes of this Agreement and only to the extent necessary for such purpose and shall restrict disclosure of the other party's Confidential Information to its employees, consultants or independent contractors with a need to know and shall not disclose the other party's Confidential Information to any third party without the prior written approval of the other party. Notwithstanding the foregoing, it shall not be a breach of this Agreement for either party to disclose Confidential Information of the other party if required to do so under law or in a judicial or other governmental investigation or proceeding, provided the other party has been given prior notice and the disclosing party has sought all available safeguards against widespread dissemination prior to such disclosure.

2. Confidential Information Defined. As used in this Agreement, the term Confidential Information refers to: (i) each party's trade secrets, business plans, strategies, methods and/or practices, designated in writing to be confidential; (ii) any personal information of the Participants; and (iii) other information relating to either party that is not generally known to the public, including information about either party's personnel, products, customers, marketing strategies, services or future business plans. Notwithstanding the foregoing, the term Confidential Information specifically excludes (i) information that is now in the public domain or subsequently enters the public domain by publication or otherwise through no action or fault of the receiving party; (ii) information that is known to the receiving party without restriction, prior to receipt from the disclosing party under this Agreement, from its own independent sources as evidenced by the receiving party's written records, and which was not acquired, directly or indirectly, from the disclosing party; (iii) information that the receiving party receives from any third party having a legal right to transmit such information, and not under any obligation to keep such information confidential; and (iv) information independently developed by the receiving party's employees or Partner provided such information does not rely on the Confidential Information received hereunder.

3. Partner Data. INCENTIVE LOGIC adheres to a privacy policy that guarantees the privacy rights of the Partner and Participants from non-requested marketing practices in the form attached at Exhibit B and incorporated herein. In addition, INCENTIVE LOGIC shall adhere to the program guidelines in the form attached at Exhibit B and incorporated herein. Prior to the Program launch, Partner and INCENTIVE LOGIC may agree to revise the Program privacy policy and guidelines which shall be posted upon Program launch. No changes may be made to the Program's privacy policy or guidelines without the prior written consent of Partner. INCENTIVE LOGIC will not use, disclose or disseminate any Partner or Participant information except for purposes authorized under this Agreement. Any INCENTIVE LOGIC or third party marketing programs are conducted on an opt-in basis and will only occur upon the request of the recipient or by the Partner's initiative. INCENTIVE LOGIC shall not actively attempt to recruit any of Partner's registrants or Participants for any of INCENTIVE LOGIC or third party marketing programs.

4. Proprietary Rights. Subject to the terms and conditions of this Agreement, Partner retains the exclusive, right to all data collected, processed or produced by the Application during the term of this Agreement ("the Program Data"), provided that INCENTIVE LOGIC shall have the non-exclusive use of and archival right to such data in accordance with the terms of this Agreement and the privacy program associated with the rewards program. Within 30 days of termination of this Agreement, INCENTIVE LOGIC shall destroy or purge all copies of any personal information or any other Confidential Information of Partner, RJM and

chgo1\30819519.64

www.incentivelogic.com  *Ignite Performance*™


**INCENTIVELOGIC**
7635 East McClain Drive • Scottsdale, AZ 85260

Participants, and upon request by Partner, shall certify such destruction. INCENTIVE LOGIC shall also deliver to Partner in electronic and paper format a copy of all Program Data within 10 days of the termination of this Agreement, provided that Partner has paid INCENTIVE LOGIC all fees due under this Agreement.

5. The parties agree to comply with the terms of that certain Confidentiality and Non-Solicitation Agreement dated June 15, 2006 between INCENTIVE LOGIC and Partner.

K. **TRANSFERABILITY.**

This Agreement may not be assigned by either party, in whole or in part, without the written permission of the other party, such permission not to unreasonably be withheld.

L. **GOVERNING LAWS/CONSENT TO JURISDICTION.**

The parties agree that all actions and proceedings relating to this Agreement shall be commenced in the state or federal court in or nearest Chicago, Illinois. This Agreement is to be construed in accordance with and governed by the laws of the State of Illinois. In the event of any legal action, including arbitration, arising out of or in connection with this Agreement, the prevailing party shall be entitled to recover its reasonable attorney's fees, costs and expenses incurred in such action.

M. **MISCELLANEOUS.**

1. Force Majeure. Neither party shall be liable in damages or have the right to terminate the Agreement for any delay or default in performing this Agreement if such delay or default is caused by conditions beyond its control, including, but not limited to, acts of God, government restrictions, wars, insurrections, strikes, fire, floods or work stoppages; provided, however, that if such delay or default shall exceed three months, Partner shall have the right to terminate this Agreement pursuant to Section E of this Agreement, but without the requirement for 90 day notice.

2. Entire Agreement. This Agreement and that certain Confidentiality and Non-Solicitation Agreement dated June 15, 2006 by and between Incentive Logic and Partner contain the entire agreement of the parties and shall not be varied, amended, or supplemented except in writing of subsequent or even date executed by the parties.

3. Section Headings. Section headings are for convenience only and are not a part of this Agreement.

4. Enforceability. If any part of this Agreement shall be held unenforceable, the remainder of this Agreement will nevertheless remain in full force and effect.

5. Counterparts. This Agreement may be executed in counterparts which taken together shall constitute one agreement, and either party may execute this Agreement by signing such counterpart.

6. No Agency. For the purposes of this Agreement, the parties will at all times be independent contractors. Nothing in this Agreement shall be construed to constitute or appoint either party as the Partner or representative of the other party for any purpose whatsoever, or to grant to either party any rights or authority to assume or create any obligation or responsibility, express or implied, for or on behalf of or in the name of the other, or to bind the other in any way or manner whatsoever.

7. Notices. All notices required by this Agreement shall be in writing and sent to the Partner and INCENTIVE LOGIC at the addresses sent forth above. Either party may from time to time change its address as set forth above by notifying the other party of its new address in writing.

chgo1\30819519. 65

*www.incentivelogic.com Ignite Performance™*



**INCENTIVELOGIC**
7835 East McClain Drive · Scottsdale, AZ 85260

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the Effective Date.

FOR PARTNER:

FLAIR COMMUNICATIONS AGENCY, INC.

By: *(signature)*

Name: PETER BRAY

Title: Sr. Vice President

FOR INCENTIVE LOGIC:

INCENTIVE LOGIC, INC.

By: *(signature)*

Name: R Hackett

Title: CEO

09/24/2006 17:38   4807760899                    ILI                              PAGE 07


7835 East McClain Drive · Scottsdale, AZ 85260

## ADDENDUM A
## STATEMENT OF WORK
## FLAIR COMMUNICATIONS AGENCY, INC.

This Statement of Work is pursuant to the Terms and Conditions as outlined in the Master Agreement made effective August 25, 2006. Incentive Logic will implement an incentive reward solution within the Loyalty Studio.

SECTION I. OBLIGATIONS OF INCENTIVE LOGIC

1. **Initial Program design consulting which includes the following:**

   Incentive Logic will design the structure of the incentive program including point values per action, redemption levels, detailed data modeling and redemption cost estimates. Specific recommendations will be made to ensure program effectiveness and to maximize return on investment.

2. **(a) Phase I Set-up and Website Launch.** Set-up and development services to be provided by Incentive Logic during Phase I of the rewards program includes the following:

   a) Data transfers, testing and integration
   b) Development of a Private-labeled web site (up to 6 hours of website design consulting) to successfully launch on August 1, 2006
   c) Unique Participant account with 24/7 access via the Internet
   d) Point transfers with high security protocols including points awarded, redeemed and ending balance.
   e) Administrative support
   f) Access to Studio Director (permission-based access)
   g) Standard Reporting Module
   h) Marketing communication design and functionalities include:
      o Welcome letter and program intro
      o Points earned email
      o Redemption made and bonus points granted email
      o Promotional Product email
      o Monthly account balance/statement email
   i) Standard reporting module (real time) including the following reports:
      o Folio Redemption Report
        • Shows all order information for redemptions made
      o Folio Views Report
        • Shows Folio activity on website (which Folios are being looked at by members)
      o Reward Views Report
        • Shows rewards activity on website (which rewards are being looked at by members)
      o New User Report
        • Shows new users that have been added into the system
      o Transaction Summary
        • Shows all point transaction activity during a specified period (points in, points out, adjustments)

chgo1\30819643.7 1

www.incentivelogic.com  Ignite Performance™


**INCENTIVELOGIC**
7835 East McClain Drive - Scottsdale, AZ 85260

Program Folio redemption thresholds and point redemption levels once implemented and communicated to Participants cannot be changed if the change would negatively effect the Participant. If Folio redemption thresholds and point redemption levels are redesigned, only new Participants will be subject to the new redemption threshold.

(b) **Phase II Leaderboard Launch.** Phase II includes launching the leaderboard part of the project when the points become redeemable. The leaderboard specifications and requirements will be mutually agreed upon by the parties and attached as Exhibit A attached hereto.

(c) **Post Phase II Launch.** If Partner requests design, promotional or graphic element changes after Phase II private-labeled website, leaderboard and application are launched, Partner agrees to pay INCENTIVE LOGIC $125 per hour to effectuate the changes; provided, however, Partner shall not be charged for any changes required to fix any aspect of the website, leaderboard and/or application for the rewards program necessary so that the program performs in accordance with the designs and specification agreed upon by the parties.

3. **Program Administrative Support.** Administrative support to be provided by Incentive Logic includes the following:

   a) On-going performance tracking & process improvement
   b) Email support M-F 8am-5pm (Arizona)
   c) Phone support for designated program manager only M-F 8am-5pm (Arizona)
   d) Reward management
   e) Application/website maintenance
   f) 24/7 hosting
   g) Software technical support
   h) Quarterly loyalty program evaluation and review (via Live Meeting web conferencing)

4. **Reward Services:**

   Participants may select and redeem one of the rewards offered in a Folio once reward levels are earned. Each reward selected for inclusion in the Folio shall have a maximum retail value as agreed to by the parties. INCENTIVE LOGIC acknowledges that Partner reserves the right, in its sole discretion, to exclude certain rewards from the Folio(s). Rewards will be reviewed and refreshed on an as-needed basis to ensure product availability and the provision of a compelling assortment of rewards. INCENTIVE LOGIC may also substitute rewards with alternative rewards of equivalent value if redemption levels and/or forecasts are low or inaccurate with the approval of Partner. Products will be shipped within 10-15 business days after receipt of order.

   Product returns or warranty claims will be handled through INCENTIVE LOGIC as a part of the services provided to Partner.

5. **Sweepstake Services.** The parties acknowledge and agree that this Agreement does not include sweepstake services.

6. **Marketing and Promotion:**
   a) INCENTIVE LOGIC agrees to prominently post the Partner logo and/or other branding artwork (as approved by Partner) on the Partner Folio(s) page(s) setup and/or maintained on the INCENTIVE LOGIC Application, as approved by Partner.

   b) INCENTIVE LOGIC agrees to work with Partner to launch promotions and public relations campaigns relating to the Partner's Program(s), as mutually agreed upon by the parties.

**SECTION II: OBLIGATIONS OF PARTNER**

Partner shall pay INCENTIVE LOGIC the following service fees in connection with the INCENTIVE LOGIC Application and Points Program.

1. **Loyalty Application Service Licensing Fee and Program Set-up Fee:**

chgo1\30819643.72

www.incentivelogic.com *Ignite Performance*™


7835 East McClain Drive · Scottsdale, AZ 85260

In consideration for the service to be provided herein, Partner agrees to pay a Fifty Thousand Dollar ($50,000) fee for a license to use the Loyalty Application and development and set-up of the incentive program and the private-label website. Ten Thousand Dollars ($10,000) of such fee will be payable upon execution of this Agreement. The balance will be invoiced by Incentive Logic in two (2) equal installments of Twenty Thousand Dollars ($20,000) on August 15, 2006 and August 31, 2006, respectively, and payable within thirty (30) days of invoice date. Partner acknowledges and agrees that it shall be obligated to pay Incentive Logic the amounts due under this Section notwithstanding any termination of the Agreement pursuant to Section E hereof.

2. **Payment for Points.** Except as provided below, Partner further agrees to pay for points as they are redeemed by Participants. Incentive Logic shall bill Partner One Dollar ($1.00) for every one hundred (100) points redeemed. Incentive Logic acknowledges and agrees that Partner shall be entitled to a ten percent (10%) redemption of fees payable to Incentive Logic under this Section as long as the Product redeemed using such points are Products supplied by INCENTIVE LOGIC's Supplier Network. Therefore, all invoices for amounts payable under this Section for redemption of points shall be reflect the ten percent (10%) redemption (i.e., Partner shall pay $0.90 for every one hundred points (100) redeemed once the invoice has been adjusted to reflect the 10% redemption amount.). Partner will be able to request Folio Reward Catalogs at various price points. Incentive Logic shall be responsible, at its sole cost, for all shipping and handling of Products.

Incentive Logic will invoice Partner weekly for points redeemed, provided that RIM agrees to pay Partner weekly for amounts due to Partner under the RIM Contract. If RIM does not agree to pay Partner weekly than Incentive Logic will invoice Partner on a bi-weekly basis. All invoices shall be paid in full within thirty (30) days of the date of the invoice.

Partner agrees that the minimum amount payable to Incentive Logic for points redeemed for Products from the Supplier Network during the initial one year term of this Agreement shall be Five Hundred Thousand ($500,000) ("Minimum Contract Amount); provided that there will be no minimum requirement if this Agreement is terminated prior to the expiration of the one (1) year term due to a termination of the RIM Contract or default by Incentive Logic. Incentive Logic acknowledges and agrees that the gross invoice amount for points redeemed (prior to the 10% redemption) shall be the amount used for purposes of calculating the Minimum Contract Amount

Prior to adding any new Products to a Folio, Incentive Logic shall submit to Partner the Products to be included in each Folio for Partner's prior written approval. Partner shall have seven (7) days to approve or disapprove such Product.

Gift cards and charity donations have a processing fee of 10% of the face value.

Notwithstanding anything to the contract contained herein, Incentive Logic acknowledges and agrees that Partner may, at its cost, include in the Folios Products which are not from the Incentive Logic Supplier Network. In the event a Participant redeems points for such product, Partner will not be obligated to pay Incentive Logic for the points redeemed. Instead, Partner will pay Incentive Logic a fee equal to 10% of the "value of the points" redeemed. ("Value of the Points" shall be calculated based on One Dollar ($1.00) for every one hundred (100) points redeemed.)

If prior to the expiration of the one (1) year term of this Agreement, Partner elects to exercise its right to terminate this Agreement without cause, or Incentive Logic terminates this Agreement by reason of Partner's default under this Agreement, and Partner has not paid the Minimum Contract Amount, Partner shall pay Incentive Logic an early termination fee equal to (a) the quotient of the number of days remaining in the term of the Agreement divided by 365, multiplied by (b) Twenty-Five Thousand Dollars ($25,000).

3. **Monthly Service Fee:** A monthly service fee of $1,490 will be billed at the beginning of each month commencing immediately after Phase I website is launched. Monthly service fees shall be paid within thirty (30) days of the date of the invoice.

4. **Redemption of Points:**

chgo1\30819643 73

www.incentivelogic.com *Ignite Performance*


7835 East McClain Drive · Scottsdale, AZ 85260

Partner will work directly with Incentive Logic to develop the redemption criteria used in conjunction with defining of Folio point thresholds. Partner is solely responsible for determining eligibility of their Participants to earn points, participant in the Program, and qualify to redeem Folios. In the event Partner advises Incentive Logic that a Participant is no longer eligible for the program, Incentive Logic will immediately cease to give such Participant access to the Reward Site or any other site for the Rewards Program and such Participants points shall become obsolete.

Partner additionally remains fully responsible for the accounting treatment of accrued points. Partner shall provide Incentive Logic with summarized member demographics to allow Incentive Logic to create unique reward selections for Partner's Folios.

5. **Program Termination Process:**
   In the event Partner should decide to terminate the Rewards program pursuant to Section E of the Agreement, the following termination process will apply:
   a. Termination will be effective 90 days after delivery of written notice to Incentive Logic.
   b. During the 90 day period, communications will be sent to Participants at 30 and 60 days prior to termination date and bi-weekly until effective date of termination.
   c. Verbiage will also be included on the monthly statement regarding program termination.
   e. Participants will be able to redeem points from the Folio Reward Catalogs during this period
   f. Partner agrees to pay a termination fee of 3% of the point value remaining in the accounts. Fee is due and payable within 30 days after effective date of termination. Incentive Logic and Partner acknowledges and agrees that Partner shall not be obligated to pay for any unredeemed points as of the effective date of the termination (other than the 3% termination fee provide in this Section).

6. **Technical and Integration.**
   a. Partner agrees to provide INCENTIVE LOGIC with reasonable technical assistance to allow INCENTIVE LOGIC to oversee the successful integration between the INCENTIVE LOGIC Application and Partner's infrastructure.

   b. Partner grants INCENTIVE LOGIC permission to use Partner's branded logo and corporate identity artwork and trademarks on the INCENTIVE LOGIC web site(s) and in customized Folios, subject to Partner's approval.