IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| INCENTIVE LOGIC, INC., a Delaware corporation, | ) ) ) |
| Plaintiff, | ) ) Case No. 07 C 6762 |
| v. | ) ) Judge Andersen ) Magistrate Judge Keys |
| FLAIR COMMUNICATIONS AGENCY, INC., an Illinois corporation, | ) ) ) |
| Defendant. | ) |

### PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION

Plaintiff Incentive Logic, Inc. ("Incentive"), by its undersigned attorneys, submits this response in opposition to Defendant's Motion to Dismiss for Lack of Subject Matter Jurisdiction pursuant to Fed.R.Civ.P. 12(b)(1) ("Motion"). Defendant's Motion should be denied for two reasons:

    a.    Plaintiff's monetary damages for breach of contract exceed the $75,000 jurisdictional minimum under the plain meaning of the contractual Minimum Contract Amount provision at issue in this case, and

    b.    Plaintiff's claim for attorneys' fees recoverable under the subject contract are included in determining whether the jurisdictional minimum claim is met, and therefore Plaintiff's damage claim (including both the Minimum Contract Amount claim and the attorneys' fee claim) exceeds the jurisdictional minimum even under Defendant's incorrect interpretation of the Minimum Contract Amount provision.

In support, Defendant submits the supporting Declarations of Michelle Hoffman and Steven M. Hartmann, which are attached hereto as Exhibits A and B, and further states as follows:

<u>The Complaint</u>

1. Incentive is in the business of developing and administering performance-based rewards programs. Complaint at ¶5.

2. Flair is an advertising and public relations agency. *Id.* at ¶6.

3. In 2006, Flair desired to engage Incentive to provide a loyalty and rewards program encompassing Incentive's web-enabled points application program account servicing, Folio™ reward catalog technology and reward fulfillment service for participants. *Id.* at ¶7.

4. Incentive and Flair entered into a Master Agreement, effective August 25, 2006 (the "Agreement"), a copy of which is attached to Incentive's Complaint as Exhibit A. *Id.* at ¶8.

5. Under the Agreement, Incentive agreed to design, set-up and launch, and provide program administrative support for an incentive reward points program for the benefit of Flair's customer Research In Motion, Ltd. ("RIM"), as described in detail in Section I of Addendum A to the Agreement (hereinafter referred to as the "Addendum"). *Id.* at ¶9.

6. Under Section D of the Agreement and Section II of the Addendum, Flair agreed to make certain payments to Incentive for these services. *Id.* at ¶10.

7. Pursuant to Section II(2) of the Addendum, entitled "Payment for Points," Flair agreed to pay Incentive for points as they were redeemed by participants as follows: On a monthly basis, Flair agreed to pay Incentive $1.00 for every 100 points redeemed by participants, however, this payment was subject to a reduction of 10% for redemption of points, and therefore the amount required to be paid monthly was $0.90 for every 100 points redeemed (after the adjustment to reflect the 10% redemption amount). *Id.* at ¶11.

8. The "Minimum Contract Amount" provision in Section II(2) of the Agreement states that the minimum amount payable to Incentive for points redeemed during the initial one

2

year term of the Agreement is $500,000. *Id.* at ¶12 and Ex. A thereto. Said provision states in relevant part:

> Payment for Points. Except as provided below, [Flair] further agrees to pay for points as they are redeemed by Participants. [Incentive] shall bill [Flair] One Dollar ($1.00) for every one hundred (100) points redeemed. [Incentive] acknowledges and agrees that [Flair] shall be entitled to a 10 percent (10%) redemption of fees payable to [Incentive] under this Section as long as the Product redeemed using such points are Products supplied by [Incentive] Supplier Network. Therefore, all invoices for amounts payable under this Section for redemption of points shall be (sic) reflect the ten percent (10%) redemption (*i.e.*, [Flair] shall pay $0.90 for every one hundred points (100) redeemed once the invoice has been adjusted to reflect the 10% redemption amount)…
>
> [Flair] agrees that the minimum amount payable to [Incentive] for points redeemed by Products from the Supplier Network during the initial one year term of this Agreement shall be Five Hundred Thousand ($500,000) ("Minimum Contract Amount); provided that there will be no minimum requirement if this Agreement is terminated prior to the expiration of the one (1) year term due to a termination of the RIM Contract or default by [Incentive]. [Incentive] acknowledges and agrees that the gross invoice amount of points redeemed (prior to the 10% redemption) shall be the amount used for purposes of calculating the Minimum Contract Amount.

9. The Agreement became effective August 25, 2006 and remained in effect for a period of one year thereafter, through and including August 24, 2007. (See Compl., Ex. A, Section E, paragraph 1; Addendum A, first sentence.) *Id.* at ¶13.

10. The Agreement was not terminated prior to the expiration of the one-year term. *Id.* at ¶14.

11. Incentive designed, set-up and launched, and administered the RIM Incentive Reward Points Program, and otherwise fully performed all of its obligations under the Agreement. *Id.* at ¶15.

12. In exchange for its services provided during the one-year term of the Agreement, Incentive received only $383,956.45 for points redeemed by participants, and therefore it was

entitled to the Minimum Contract Amount determined under Section II(2) of the Addendum. *Id.* at ¶16. See also p. 6-7 below.

13.     The Minimum Contract Amount owed by Flair to Incentive under the Agreement is $82,107.30, calculated as follows: $500,000 minus $417,892.70 (which is the gross invoice amount for points redeemed prior to the 10% redemption). *Id.* at ¶17.

14.     Pursuant to Section L of the Agreement: "In the event of any legal action, including arbitration, arising out of or in connection with this Agreement, the prevailing party shall be entitled to recover its reasonable attorney's fees, costs and expenses incurred in such action." *Id.* at ¶21 and Ex. A thereto at p. 5.

15.     Through June 30, 2008, Incentive has incurred legal fees of Freeborn & Peters LLP totaling $9,269.60, and of Snell & Wilmer totaling $5,000 with respect to this matter (not including costs and expenses) (Ex. A, ¶3-4; Ex. B, ¶3). In addition, Incentive's counsel reasonably anticipates that Incentive will incur additional legal fees with respect to written discovery and taking and defending 5-10 depositions (which have not yet been initiated), and anticipates filing a motion for summary judgment. The parties have disclosed 26 individuals with relevant knowledge, more than half of whom reside outside Illinois, and it is anticipated that 5-10 of them will need to be deposed. Incentive's counsel reasonably estimates that the legal fees to do this additional work will exceed $20,000. Therefore, the total legal fees incurred by Incentive will be approximately $35,000. (Ex. B, ¶4).

16.     Incentive's Complaint seeks recovery of monetary damages for breach of contract of $82,107.30 (the balance of the Minimum Contract Amount) plus its legal fees (which are currently over $14,000, and expected to total at least $35,000).

4

<u>Argument</u>

<u>Defendant's Motion Should Be Denied Because Incentive's Contractual Damages Exceed the $75,000 Jurisdictional Minimum</u>

Defendant's Motion is based wholly on the distortion, disingenuous interpretation of the applicable contract language and should be rejected.

To justify dismissal of a complaint for lack of subject matter jurisdiction on a challenge to the minimum jurisdictional amount, it must appear to a legal certainty that the claim is really for less than the jurisdictional amount. *Batt's Restaurant, Inc. v. Commercial Insurance Company of Newark,* 406 F.2d 118, 120 (7th Cir. 1969), citing *St. Paul Mercury Indemnity Co. v. Red Cab Co.,* 303 U.S. 283, 289 (1938). According to the Seventh Circuit Court of Appeals, "If there is a reasonable possibility that the plaintiff can recover more than [the minimum jurisdictional amount, which was then $10,000] on his claim, the jurisdictional minimum is satisfied; otherwise every case that a defendant won on the merits would be dismissed on jurisdictional grounds, allowing the plaintiff to start over in state court." *Ross v. Inter-Ocean Insurance Co.,* 693 F.2d 659, 663 (7th Cir. 1982), citing *Hixson v. Sherwin-Williams Co.,* 671 F.2d 1005, 107 (7th Cir. 1982).

Incentive's damages claim (even without considering its legal fees claim discussed below) is based on the plain meaning of the Minimum Contract Amount provision in the Agreement. The key sentence of the relevant section of the Agreement states: "…[Flair] agrees that the minimum amount payable to Incentive for points redeemed for Products from the Supplier Network during the initial one year period of this Agreement shall be $500,000 ("Minimum Contract Amount")." The Agreement's use of the word "payable" in this triggering sentence clearly should be read as the <u>net</u> amount Flair needs to <u>pay</u>, not the <u>gross</u> amount to be <u>billed</u> before a 10% adjustment. This interpretation is supported by and consistent with the

5

language used in the prior section of this provision: In the first sentence following the heading "Payment for Points," a clear distinction is made between the gross amount to be "billed" to Flair as opposed to the amount "payable" by Flair after the discount is applied. The last sentence in the last paragraph in that section relied upon by Defendant for its interpretation ("Incentive …. agrees that the gross invoice amount for points redeemed (prior to the 10% redemption) shall be the amount used for purposes of calculating the minimum contract amount") simply reflects that the credit reduction to be applied for determining the balance owed by Flair (*i.e.*, minimum minus gross invoice amount) is calculated using the gross rather than the net payment figure, which is to Flair's advantage. <u>But this sentence does not change the prior language clearly setting forth that $500,000 is the minimum amount "payable."</u>

Accordingly, Incentive's calculation of its monetary damages (without considering its legal fees), which was contained in its Initial Disclosures (which was attached to the Motion), is correct. Defendant certainly cannot establish that there is not a "reasonable possibility" that Incentive can recover more than the jurisdictional minimum on its claim. Incentive's damage claim is $82,107.30, calculated as follows under the clear language of the Minimum Contract Amount provision:[1]

Computation of Damages

| Invoice Date | Invoice # | Rewards | Discount | Net |
|---|---|---|---|---|
| 12/31/2006 | RIM123106-F | $ 11,100.00 | $ 1,110.00 | $ 9,990.00 |
| 1/17/2007 | RIM011707-F | 4,600.00 | 460.00 | 4,140.00 |
| 1/31/2007 | RIM013107-F | 8,150.00 | 875.00 | 7,275.00 |
| 2/16/2007 | RIM021607-F | 5,300.00 | 530.00 | 4,770.00 |
| 2/28/2007 | RIM022807-F | 4,700.00 | 470.00 | 4,230.00 |

---

[1] Defendant also argues incorrectly that Defendant "overpaid" because Incentive's calculation failed to apply a full 10% discount to the gross amount billed for points redeemed (Motion, p. 5 fn.2). However, as set forth in the Agreement, the discount applied only to Incentive Vendor Supplied Products. Discounts are not allowed on RIM product or e-certificates, for example. Detailed redemption reports were provided to Defendant with each invoice showing the applicable discounts, which can be furnished to the Court if necessary, however given the other arguments set forth herein, the jurisdictional minimum is clearly satisfied.

| Invoice Date | Invoice # | Rewards | Discount | Net | |
|---|---|---|---|---|---|
| 3/16/2007 | RIM031607-F | 11,750.00 | 1,175.00 | 10,575.00 | |
| 3/31/2007 | RIM033107-F | 24,900.00 | 700.00 | 24,200.00 | |
| 4/17/2007 | RIM041707-F | 9,500.00 | 950.00 | 8,550.00 | |
| 4/30/2007 | RIM043007-F | 25,860.00 | 2,820.00 | 23,040.00 | |
| 5/18/2007 | RIM051807-F | 18,417.50 | 1,841.75 | 16,575.75 | |
| 5/31/2007 | RIM053107-F | 6,137.50 | 1,045.75 | 5,091.75 | |
| 6/25/2007 | RIM062107-F | 17,732.70 | 1,471.50 | 16,261.20 | |
| 6/30/2007 | RIM063007-F | 19,760.00 | 1,985.00 | 17,775.00 | |
| 7/18/2007 | RIM071807-F | 13,362.50 | 1,193.25 | 12,169.25 | |
| 7/31/2007 | RIM073107-F | 49,775.00 | 3,931.25 | 45,843.75 | |
| 8/17/2007 | RIM081707-F | 80,762.50 | 5,914.25 | 74,848.25 | |
| 8/31/2007 | RIM083107-F | 103,135.00 | 7,168.50 | 95,966.50 | |
| 9/13/2007 | RIM091307-F | 2,950.00 | 295.00 | 2,655.00 | Paid afterwards |
| | | $417,892.70 | $33,936.25 | $383,956.45 | |
| | | | | | |
| 9/27/2007 | RIM092707-F | 85,057.30 | | $ 85,057.30 | Balance Invoice |
| | | 502,950.00 | | | |

Minimum Contract Amount = $82,107.30 calculated as follows: $500,000 minus $417,892.70 (gross invoice amount for points redeemed prior to 10% discount).

In addition, Incentive has a claim for recovery of its legal fees incurred in this matter under the attorneys' fees provision in Section L of the Agreement (Complt., Exhibit A, p. 5). The Seventh Circuit Court of Appeals has held that "where a litigant has a right, based on contract, statute, or other legal authority, to an award of attorney's fees if he prevails in the litigation, a reasonable estimate of those fees may be included in determining whether the jurisdictional minimum is satisfied." *Sarnoff v. American Home Prod.*, 799 F.2d 1075, 1078 (7th Cir. 1986). See also, *Batt's Restaurant, supra*; 406 F.2d at 120; *Ross, supra.*, 693 F.2d at 661.

Through June 30, 2008, Incentive has incurred legal fees of $14,269.60 with respect to this matter. (Exhibits A and B hereto). Moreover, Incentive's counsel reasonably estimates that Incentive will incur additional legal fees of at least $20,000 to conduct written discovery, take and defend numerous depositions (all of the potential deponents reside outside of Illinois), prepare a response to this motion, and prepare a motion for summary judgment and ancillary

filings including a reply memorandum and potentially a response to a cross-motion for summary judgment. Exhibit B, ¶4.

Accordingly, even were the Court to agree with Defendant's convoluted interpretation of the Agreement and conclude that Incentive's Minimum Contract Amount damage claim should be reduced to $66,043, Incentive's legal fee claim, pursuant to the contractual fee-shifting provision, exceeds $30,000. Thus, there is a reasonable possibility Incentive will recover a claim in excess of the $75,000 jurisdictional minimum and the Motion should be denied.[2]

## CONCLUSION

WHEREFORE, for the foregoing reasons, Plaintiff Incentive Logic, Inc. respectfully requests that the Court deny Defendant's motion to dismiss the Complaint for lack of subject matter jurisdiction, award Incentive its costs, and grant such other relief as is just.

INCENTIVE LOGIC, INC.

By    /s/ Steven M. Hartmann
       One of Its Attorneys

Steven M. Hartmann
ARDC No. 6185428
Freeborn & Peters LLP
311 South Wacker Drive
Suite 3000
Chicago, IL 60606-6677
Tel: 312-360-6000
Fax: 312-360-6573

Counsel for Plaintiff

1587721v1

---

[2] Defendant further argues that Incentive's damages somehow should be reduced by alleged cost savings, however fails to provide any factual support or any effort whatsoever to quantify said cost savings sufficient for the Court to rule, as a matter of law, that Incentive's damages should be reduced from the Minimum Contract Amount set forth clearly and unequivocally in the contract provision. The alleged cost savings related to maintaining the website is defeated by the terms of the Agreement, since the fee to maintain the website was covered by the monthly service fee which is not in dispute. The $500,000 Minimum Contract Amount applied solely to the point redemption for product. See, Compl. Ex. A, Addendum A, ¶3, at p. 3.

## **CERTIFICATE OF SERVICE**

I, Steven M. Hartmann, an attorney, do hereby certify that I caused the attached Plaintiff's Response to Defendant's Motion to Dismiss for Lack of Subject Matter Jurisdiction to be served upon the party shown below by causing a copy of same to be sent via U.S. Mail on or before 5:00 p.m. on July 18, 2008:

>Cary E. Donham
>Shefsky & Foelich Ltd.
>111 E. Wacker Drive, Suite 2800
>Chicago, Illinois 60601
>cdonham@shefskylaw.com


                                                    /s/ Steven M. Hartmann