IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| INCENTIVE LOGIC, INC., a Delaware corporation,<br><br>Plaintiff,<br><br>v.<br><br>FLAIR COMMUNICATIONS AGENCY, INC., an Illinois corporation,<br><br>Defendant. | No. 07 C 6762<br><br>Judge Wayne R. Andersen |

**DEFENDANT'S REPLY IN SUPPORT OF THE MOTION TO DISMISS
FOR LACK OF SUBJECT MATTER JURISDICTION**

Defendant, Flair Communications Agency ("Flair"), by and through its undersigned attorneys, hereby submits its Reply in support of the Motion to Dismiss.

**ARGUMENT**

The Plaintiff, Incentive Logic, Inc. ("Incentive"), has failed to establish through competent proof that the amount in controversy satisfies the requirements for jurisdiction under 28 U.S.C. § 1332. If uncontested, a mere allegation that the jurisdictional amount is satisfied may be adequate. However:

> "if the court's jurisdiction is challenged as a factual matter by either the court or the opposing party, the party invoking the jurisdiction bears the burden of supporting its jurisdictional allegations by 'competent proof.' This has been interpreted to mean a preponderance of the evidence or 'proof to a reasonable probability that jurisdiction exists." *NLFC, Inc. v. Devcom Mid-America, Inc.*, 45 F.3d 231, 237 (7th Cir. 1995).

Incentive's Response does not offer competent proof that indicates to a reasonable probability that over $75,000 is in controversy in this case. According to the Contract, the most that may be due to Incentive in exchange for products is $66,043.55. Further, whether the amount due is $66,043.55, or $82,107.30, the Plaintiff would only be entitled to recover the profits on selling $66,043.55 or $82,107.30 worth of products to Flair, otherwise it would be receiving the full price for products while retaining the actual products. Lastly, the Plaintiff's argument that $30,000 in attorney's fees should be added to the amount in controversy is directly refuted by Seventh Circuit precedent.

I.  **THE AMOUNT REQUIRED TO BE PAID TO INCENTIVE FOR PRODUCTS PURSUANT TO THE "MINIMUM CONTRACT AMOUNT" IS $450,000.**

According to the Contract, the $500,000 minimum amount is the amount that Incentive must be allowed to bill Flair for points redeemed, *prior to a 10% redemption*, for products supplied by the Supplier Network. *See* exhibit "1" to the Motion to Dismiss ("Motion"), Contract attached as exhibit "A," Addendum A, Section II, Paragraph 3. The Plaintiff claims in its response that $500,000 is the net amount that Incentive must be paid for products under the contract. *See* Plaintiff's Response to the Motion to Dismiss ("Response"), p. 5. Plaintiff argues that the word "payable" in the first sentence of the paragraph addressing the Minimum Contract Amount controls this issue - "the minimum amount payable to Incentive Logic for points redeemed for Products from the Supplier Network. . . shall be Five Hundred Thousand ('Minimum Contract Amount')." *Id.*

This sentence cited by the Plaintiff may appear when taken on its own to have the meaning that Incentive argues, until one takes into consideration how fees for products in the contract were computed, and other language used in the same section of the contract. "It is a

2

basic tenet of contract construction that contracts are to be read as a whole and that each part is to be read in light of the others." *Village of Oak Lawn v. Faber*, 378 Ill.App.3d 458, 473, 880 N.E.2d 659, 672 (1st Dist. 2007) (citation omitted). Incentive billed Flair one dollar for every one hundred points redeemed. *See* Motion, exhibit "1," Contract attached as exhibit "A," Addendum A, Section II, Paragraph 1. This same paragraph goes on to say that Flair was "entitled to a 10 percent (10%) redemption of fees payable to Incentive Logic under this Section as long as the Product redeemed using such points are Products supplied by Incentive Logic's Supplier Network." *Id.* at Paragraph 1. The amount being reduced by 10%, which is the amount billed, is referred to as "fees payable" – even though Flair was only obligated to pay 90% of this amount. If the term "fees payable" in the contract does not refer to the billed amount prior to a 10% reduction, then the sentence quoted above from paragraph 1 of Section II to the Addendum would not make sense.

This shows that the "Minimum Contract Amount," defined in Section II of the Addendum must refer to the gross invoice amount, before the 10% discount is applied, since the contract must be read as a whole, and the term, "payable," should logically be ascribed the same meaning when it is used more than once in the same section. *See Id.*

The Plaintiff argues that the language regarding calculation of the Minimum Contract Amount is to be applied only in the event of a default by Flair in order to calculate how much is owed by Flair on the Minimum Contract Amount, which is contrary to what the language in the contract. *See* Response, p. 6. If the Plaintiff were correct, the Minimum Contract Amount would not be a definite minimum, but would instead be a fluid figure. For example, if Incentive billed Flair for $500,000 worth of products, and Flair paid $450,000 after the 10% redemption, then according to Incentive's logic the minimum amount is satisfied at the end of the first year.

However, if Incentive did not bill Flair for any products, then Flair would owe $500,000 for products on the minimum contract amount at the end of the first year. Essentially Incentive is now trying to introduce a penalty clause in the contract that requires Flair to pay for products without the agreed upon redemption once the initial year on the contract is up.

The Plaintiff's interpretation of the contract language is neither accurate nor sensible, and Flair's interpretation takes into account the language in the contract as a whole. The Minimum Contract Amount is $500,000 representing the minimum that Incentive was allowed to invoice Flair prior to the 10% invoice adjustment described in the first paragraph of section II to the Addendum. After the 10% invoice adjustment, Incentive is then entitled to be paid $450,000 for products from the Supplier Network, assuming the other contract terms and conditions have been satisfied.[1] Since Incentive acknowledges that it has already received $383,956.45 for products[2], only $66,043.55 is left allegedly due for products, and this amount does not satisfy the jurisdictional requirements under 28 U.S.C. § 1332.

## II.    ANY AMOUNT DUE UNDER THE "MINIMUM CONTRACT AMOUNT" FOR PRODUCTS MUST BE REDUCED BY THE COST FOR THE PRODUCTS.

Whether the amount due for products on the contract is $66,043.55 as Flair argues, or $82,107.30 as Incentive argues, Incentive would not be legally entitled to either of these amounts

---

[1] Flair reiterates that it does not concede that *any* amount is due and owing to Incentive, and that this motion is merely contesting jurisdiction while taking all factual issues in favor for the Plaintiff, without reference to the substantive merits of the Complaint.

[2] Plaintiff states in its Response that the 10% redemption only applies to Products from Incentive Logic's Supplier Network, so products supplied by RIM or e-certificates would not receive a 10 percent discount. *See* Response, p. 6, footnote 1. The contract addresses how any points redeemed for non-Incentive products were to be handled, stating that they can be included as options for participants at Flair's cost. "In the event a participant redeems points for such product, [Flair] will not be obligated to pay Incentive Logic for the points redeemed. Instead, [Flair] will pay Incentive Logic a fee equal to 10% of the 'value of the points' redeemed. ('Value of the points' shall be calculated based on One dollar ($1.00) for every one hundred (100) points redeemed.) *See* exhibit "1" to Motion, exhibit "A," Addendum A, Section II, Paragraph 6.

should it be successful at trial. In a breach of contract claim, "the proper measure of damages is the amount of money that will place the injured part in as satisfactory a position as he or she would have been in had the contract been performed." *Equity Inc. Managers of Illinois, LLC v. McNichols*, 324 Ill.App.3d 830, 837, 755 N.E.2d 75, 80 (1st Dist. 2001). Thus, if the Court was to decide that Incentive is entitled to monies from Flair that were to be paid for products pursuant to the contract, then the highest amount due to Incentive would be the profits it would have made on such a sales.

As stated in the contract, the Minimum Contract Amount is the minimum amount that must be paid "for products from the supplier network." *See* exhibit "1" to Motion, exhibit "A," Addendum A, Section II, Paragraph 3. Products under the Contract are defined as:

> "items that INCENTIVE LOGIC develops, manufactures, licenses, or purchases for resale and/or services that INCENTIVE LOGIC sells or fulfills through its web site(s). Products may include items licensed or purchased for resale from [Flair]." *See* exhibit "1" to Motion, exhibit "A," Section A, Paragraph 3.

So the products that Flair is allegedly required to purchase from Incentive are products that it acquires or develops for a cost, and then resells, presumably for a profit. It is true that Flair does not have the exact figures regarding the costs to Incentive of acquiring these products. However, it is Incentive's burden, now that Flair has raised the question, to establish through competent proof that the amount in controversy satisfies the jurisdictional requisites of 28 U.S.C. § 1332. *NLFC,* 45 F.3d at 237. Having been given the opportunity to account for its costs and show the Court that it still satisfies the amount in controversy, the Plaintiff has failed to do so.

Even assuming that Incentive makes an extraordinary 200% profit on the products it sells to Flair, and that $82,107.30 is due on the Minimum Contract Amount that Flair must pay for products from Incentive – the highest amount that Incentive could recover would be $54,738.20,

representing the profits it would have received on such sales.[3]  *See* calculations attached as Exhibit "A."

Incentive's only response to this argument is that included in the contract are fees that address Incentive's costs.  *See* Response, p. 8, footnote 2.  These provisions only address the costs of establishing and maintaining the website and maintenance costs associated with the rewards program.  These fees have nothing to do with Incentive's costs to acquire the products it was offering through the program, the same products Flair is allegedly required to buy under the Minimum Contract Amount.  Any amount the Court may decide Flair is required to pay Incentive for products, products it will not receive, must be reduced by the amount Incentive paid to acquire such products.  Otherwise the result will be that Incentive would be placed in a far better position than it would have been had the contract been performed.

### III. ONLY A FRACTION OF THE ATTORNEY'S FEES CITED BY THE PLAINTIFF MAY BE INCLUDED AS PART OF THE AMOUNT IN CONTROVERSY.

Incentive's argument in its response that up to $30,000 in legal fees should be added to the amount in controversy in this matter is in direct contradiction to controlling precedent in the Seventh Circuit.  Incentive argues that a reasonable estimate of attorney's fees "may be included in determining whether the jurisdictional minimum is satisfied."  *See* Response p. 7 (*citing Sarnoff v. American Home Prod.,* 799 F.2d 1075, 1078 (7th Cir. 1986); *Batt's Restaurant, Inc., v. Commercial Insurance Company of Newark*, 406 F.2d 118, 120 (7th Cir. 1969); *Ross v. Inter-Ocean Insurance Co.*, 693 F.2d 659, 663 (7th Cir. 1982)).  Incentive then attaches affidavits

---

[3]  This figure also does not include any reduction for costs incurred by Flair for Incentive's failure to abide by the terms of the contract.  Customers have come forward and indicated to Flair that they are unable to use the rewards they were given through Incentive either because the vendor has gone out of business or because Incentive will no longer honor the rewards.  As a result, Flair has been burdened with compensating these customers for their lost rewards.

6

regarding costs incurred through June 30, 2008, in the amount of $14,269.60, and estimates additional costs of $20,000 in the future, concluding that even if its claims for damages are reduced, that over $30,000 should be added to the amount in controversy to account for possible attorneys fees. *See* Response, pp. 7-8; Response, Exhibits "A," and "B."

Any fees incurred after the date the Plaintiff filed the Complaint cannot be considered when determining the amount in controversy. "Unless the amount in controversy was present on the date the case began, the suit must be dismissed for want of jurisdiction." *Gardynski-Leschuck v. Ford Motor Company*, 142 F.3d 955, 958 (7th Cir. 1998). The three cases cited by Plaintiff for the proposition that fees incurred after the date of filing may be included as part of the minimum amount in controversy - *Sarnoff, Ross, and Batts* - have been abrogated by the Seventh Circuit:

> "If the defendant can extinguish the plaintiff's entire claim by tendering $75,000 or less at the outset, then the amount 'in controversy' does not exceed $75,000. (To the extent *Sarnoff, Ross, and Batts Restaurant, Inc. v. Commercial Insurance Co. of Newark* [citation omitted], imply that attorneys' fees incurred during the federal litigation count toward the jurisdictional minimum, they have been superseded by *Gardynski-Leschuck*." *Hart v. Schering-Plough Corp.*, 253 F.3d 272, 274 (7th Cir. 2001).

The Plaintiff has not provided any competent proof of attorneys fees incurred as of the date the Complaint was filed. If it is necessary to include such fees in a calculation of the amount in controversy, Flair would request that the Court perform an *in camera* inspection of Incentive's invoices to determine the amount of fees that should rightfully be included.

## IV.   CONCLUSION

While Incentive claims damages in the amount of $82,107.30, it is not legally possible based on the Contract and the applicable law that Incentive could ever recover this amount. Even assuming $82,107.30 is due on the Minimum Contract Amount for Incentive's products, and that Incentive makes a 200% profit on each product sold, and that all of Incentive's attorney's fees to date may be included as part of the amount in controversy, the amount in controversy is still only $69,007.80.  Therefore, this matter must be dismissed for lack of subject matter jurisdiction.

WHEREFORE, Defendant, Flair Communications Agency, prays that this Court dismiss this action pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction, and grant such other and further relief as the Court deems just and proper.

    Respectfully submitted,

    Flair Communications Agency


    s/ Roger J. Kiley
    One of Its Attorneys

Cary E. Donham
Roger J. Kiley
SHEFSKY & FROELICH LTD.
111 East Wacker, Suite 2800
Chicago, Illinois  60601
Telephone:	(312) 527-4000
Facsimile:	(312) 527-4011
cdonham@shefskylaw.com
ARDC#:  6196185
ARDC#:  6387728
Reply.doc

# Exhibit A to Defendant Flair's Reply

**Amount Plaintiff claims is due for purchase of products**
$82,107.30

**Calculation of cost of products,
assuming sales of $82,107.30 worth of product at a 200% profit**

$X + 2X = \$82,107.30$
$3X = \$82,107.30$
$X = \$27,369.10$

Cost of products = $27,369.10

**Calculation of profit on sale of $82,107.30 worth of products,
assuming 200% profits on the sale.**

(Selling Price) – (cost of products) = Profit
($82,107.30) – ($27,369.10) = $54,738.20

Profit on Sale of $82,107.30 worth of products = $54,738.20

**Calculation of amount in controversy,
assuming $82,107.30 is due for purchase of products from Incentive,
that Incentive would make a 200% profits on such sales, and
that all of Incentive's claimed attorney's fees to date are included.**

(Sale of $82,107.30 of products at 200% profit) – (attorneys fees) = Amount in Controversy
$54,738.20 + $14,269.60 = $69,007.80.

Amount in controversy = $69,007.80.